# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STAY SALTY, LLC,<br>43 Rehoboth Avenue<br>Rehoboth Beach, Delaware 19971 | Civil Action No.: |
| STAY SALTY IP, LLC,<br>43 Rehoboth Avenue<br>Rehoboth Beach, Delaware 19971 | |
| Plaintiffs, | **VERIFIED COMPLAINT** |
| v. | |
| LEASH CANDY INC.,<br>3326 Pinehurst Avenue<br>Pittsburgh, Pennsylvania 15216 | |
| and | |
| JESSICA KURY,<br>3326 Pinehurst Avenue<br>Pittsburgh, Pennsylvania 15216 | |
| Defendants. | |

Plaintiffs, Stay Salty, LLC, and Stay Salty IP, LLC (collectively, "Stay Salty" or "Plaintiffs") and through their attorneys, and for their Verified Complaint, alleges as follows:

## THE PARTIES

1. Plaintiffs, Stay Salty, LLC ("Plaintiffs" or "Stay Salty"), is a Delaware limited liability company with a business address in Rehoboth Beach, Delaware. All members of Plaintiffs are residents of the Commonwealth of Pennsylvania.

2. Plaintiffs, Stay Salty IP, LLC, is a Delaware limited liability company with a business address in Rehoboth Beach, Delaware. All members of Stay Salty IP, LLC are residents of the Commonwealth of Pennsylvania.

3. Defendant, Jessica Kury ("Kury") is an individual and, upon information and belief, the sole principal of Leash Candy Inc., and personally guaranteed the obligations of same under the Franchise Agreement. Kury resides in Pittsburgh, Pennsylvania.

4. Defendant, Leash Candy Inc. ("Leash Candy" and, collectively with Kury, "Defendants") is a Pittsburgh corporation with a business address in Pittsburgh, Pennsylvania. Upon information and belief, all members of Leash Candy are residents of the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

5. This Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a) because this action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq*., including claims for trademark infringement, trade dress infringement, and unfair competition.

6. This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the Lanham Act claims and form part of the same case or controversy.

7. Further, an actual, justiciable controversy now exists between the parties, and the requested relief is proper under 28 U.S.C. §§ 2201-2202.

8. Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendants are subject to the court's jurisdiction with respect to this action in this district. Moreover, the agreements at issue designate the Commonwealth or Federal court having jurisdiction over Chester County, Pennsylvania as the proper forum for litigation.

## FACTUAL ALLEGATIONS

### The Salty Paws System and Marks

9.     Stay Salty is an established full retail dog stores offering grooming as well as a variety of different dog-friendly ice cream flavors prepared using proprietary recipes topped with a wide selection of treats along with other dog-friendly frozen products and snacks to the general public, operated by Plaintiffs throughout the United States.

10.     Plaintiffs, through a license agreement with Stay Salty IP, LLC, licenses others to use its federally-registered trademark, the stylized design logo associated with Salty Paws that is the subject of U.S. Trademark Registration Number 5948042 (the "Salty Paws Mark") in the sale of goods and services associated with certain approved products and supplies.

11.     Through the use of time, skill, effort, and money, and by virtue of the license agreement, Plaintiffs are the owners and have developed the Salty Paws Mark, which has been used in the development, organization, and operation of a System of dog care outlets offering a variety of different dog-friendly ice cream flavors to the general public.

12.     Plaintiffs has entered into franchise agreements for the right to sell certain products and services utilizing the Salty Paws Mark at various locations throughout the United States.

13.     The Salty Paws System consists of the manner in which franchisees are licensed to offer and sell certain products and services utilizing Plaintiffs' marks, together with certain trade secrets, proprietary methods, and operational standards developed and adopted by Plaintiffs.

14.     Plaintiffs have developed a distinctive retail store design and merchandising system that is used consistently across Salty Paws franchise locations. The design is the product of significant investment by Plaintiffs and forms an integral part of the Salty Paws identity and customer experience.

15.     Each Salty Paws location is designed according to proprietary layout specifications that dictate the placement of store fixtures, product displays, and customer pathways throughout the store. The layout is intentionally designed to guide customers through the retail space in a particular sequence before reaching the ice cream service area, thereby encouraging customers to view and purchase additional products.

16.     The Salty Paws system includes distinctive merchandising techniques and product-display methods used uniformly across franchise locations. These include, among other elements:

(a)     custom-built product counters and display units designed according to Plaintiffs' specifications;

(b)     distinctive shelving and display arrangements for baked goods and pet treats;

(c)     proprietary product merchandising techniques for cookies, bones, and related products; and

(d)     a consistent visual presentation designed to create a recognizable retail environment associated with the Salty Paws brand.

17.     A central element of the Salty Paws retail concept is the placement of the ice cream service area at the rear of the store. Customers entering the store must pass through the merchandise area before reaching the ice cream counter. This layout is a deliberate design choice intended to expose customers to the full range of Salty Paws products and to reinforce the distinctive look and feel of the Salty Paws retail environment.

18.     Plaintiffs use these proprietary design elements consistently across approximately thirty Salty Paws franchise units. As a result, customers have come to associate the distinctive layout, merchandising style, and visual presentation of Salty Paws stores with Plaintiffs and their brand. Because these design elements are used consistently across Salty Paws locations, consumers

encountering stores with these distinctive features associate them with Plaintiffs and the Salty Paws brand.

19.    To ensure uniformity across locations, Plaintiffs provide franchisees with detailed design specifications, blueprints, and operational guidance governing the layout, fixtures, merchandising techniques, and visual presentation of each store. These materials are proprietary to Plaintiffs and are provided to franchisees solely for use in operating authorized Salty Paws locations.

20.    These proprietary design specifications include architectural drawings and blueprints for distinctive counters, display fixtures, shelving units, and other store elements used throughout Salty Paws locations. These fixtures are not generic retail displays but were specifically designed for the Salty Paws System and are used consistently across franchise locations to create a recognizable and distinctive store environment.

21.    Plaintiffs go to great lengths to maintain the confidentiality of their trade secrets and proprietary information and to prevent disclosure of those materials to the general public or unauthorized persons.

22.    Plaintiffs have developed the Salty Paws Mark for use in the operation of licensed Salty Paws businesses, which include the following trademark, which has been registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Trademark | Registration Number | Registration Date |
|---|---|---|
| | 5948042 | December 31, 2019 |

23. The foregoing registration is valid, subsisting, in full force and effect, and covers the goods and services identified in the registration certificates. The registration is incontestable under the Lanham Act, 15 U.S.C. § 1065.

24. The Salty Paws Mark has been used exclusively by Plaintiffs, and its designated licensees, in commerce in connection with the operation of Salty Paws businesses since 2018. Since that time, the Salty Paws brand has grown to approximately thirty units in multiple states (including Defendants' territory in Pittsburgh, Pennsylvania).

25. The Salty Paws Mark has become a valuable asset of substantial and inestimable worth to Plaintiffs. The Salty Paws Mark is a symbol of quality experience served by Salty Paws. Plaintiffs has a vital economic interest in protecting its name and the Salty Paws Mark. The preservation and protection of its name and the Salty Paws Mark is essential to the maintenance of the quality of Salty Paws business and the goodwill and reputation associated with them.

**The Franchise Agreement**

26. On or about March 4, 2021, Plaintiffs and Defendants entered into a Franchise Agreement pursuant to which Defendants were granted the right to operate a Salty Paws franchise location in Pittsburgh, Pennsylvania (the "Franchise Agreement"). A copy of the Franchise Agreement is attached hereto as Exhibit A.

27. Under the Franchise Agreement, Defendants were granted a limited, non-exclusive license to operate a Salty Paws store utilizing the Salty Paws System and the Salty Paws Mark.

28. The Franchise Agreement required Defendants to operate the franchised business in strict accordance with the Salty Paws System and Plaintiffs' standards and specifications.

29. The Franchise Agreement further required Defendants to use only those trade names, trademarks, service marks, trade dress, and other proprietary materials designated by Plaintiffs in connection with the operation of the franchised business.

30.     In addition, the Franchise Agreement required Defendants to maintain the confidentiality of Plaintiffs' proprietary information, including trade secrets, operational methods, design specifications, merchandising techniques, and other components of the Salty Paws System.

31.     The Franchise Agreement also required Defendants to return all proprietary materials belonging to Plaintiffs upon termination of the agreement and to cease any use of the Salty Paws System and Marks.

32.     As a condition of entering into the Franchise Agreement, Defendant Jessica Kury executed a personal guaranty pursuant to which she agreed to be personally liable for the obligations of Defendant Leash Candy under the Franchise Agreement.

**The Reaffirmation Agreement**

33.     Following disputes between the parties regarding Defendants' operation of the franchised business, the parties entered into a Settlement and Reaffirmation Agreement (the "Reaffirmation Agreement"). A redacted (for confidentiality) copy of the Reaffirmation Agreement is attached hereto as Exhibit B.

34.     The Reaffirmation Agreement confirmed the termination of Defendants' rights to operate a Salty Paws franchise location.

35.     Under the Reaffirmation Agreement, Defendants agreed to cease using the Salty Paws System and Marks and to fully rebrand the former franchise location.

36.     The Reaffirmation Agreement further required Defendants to remove all elements of the Salty Paws System from the store, including proprietary design elements, merchandising methods, and operational features associated with Salty Paws locations.

37.     The Reaffirmation Agreement specifically required Defendants to modify the appearance and layout of the store so that it would not be confusingly similar to a Salty Paws location.

38.    The Reaffirmation Agreement further required Defendants to transfer control of certain digital assets and accounts associated with the franchised business, including social media accounts and electronic communications platforms.

39.    Importantly, the Reaffirmation Agreement provides that Defendants would be relieved from certain post-termination obligations of the Franchise Agreement only "so long as" Defendants complied with the conditions set forth in the Reaffirmation Agreement."

40.    Accordingly, Defendants' release from the Franchise Agreement's post-termination obligations was expressly conditioned on Defendants' full compliance with the Reaffirmation Agreement. Because Defendants failed to satisfy those conditions—including the obligation to fully rebrand the store and cease use of Plaintiffs' proprietary system—Defendants remain bound by the post-termination obligations of the Franchise Agreement, including the obligations not to use Plaintiffs' Marks, System, or proprietary store design and not to operate a competing dog-ice-cream retail business within the restricted territory.

41.    The Reaffirmation Agreement required Defendants to complete the required rebranding and other obligations no later than March 4, 2026. That deadline has now passed.

42.    As of the filing of this Verified Complaint, Defendants have not complied with their obligations under the Reaffirmation Agreement and continue to operate the former franchise location in violation of those requirements.

43.    Because Defendants failed to comply with the conditions set forth in the Reaffirmation Agreement, Defendants are not relieved from the post-termination obligations of the Franchise Agreement.

44.    Accordingly, Defendants remain bound by the post-termination obligations of the Franchise Agreement, including the obligation to cease use of the Salty Paws System, Marks, and proprietary store design.

**Defendants' Breaches and Continued Operation of a Confusingly Similar Store**

45.     Despite the expiration of the March 4, 2026 deadline and Defendants' continuing obligations under the Franchise Agreement, Defendants have failed to rebrand the store and continue to operate a business that incorporates the distinctive design elements, merchandising techniques, and overall visual presentation of a Salty Paws location.

46.     Among other things, Defendants have failed to properly rebrand the former Salty Paws location.

47.     Instead, Defendants continue to operate the location using the same distinctive layout, fixtures, merchandising techniques, and overall visual presentation used by Salty Paws franchise locations.

48.     Defendants continue to utilize proprietary store design elements developed by Plaintiffs, including custom counters and display fixtures designed according to Plaintiffs' architectural specifications.

49.     Plaintiffs' proprietary counter design, which features a distinctive corrugated front panel and specific structural configuration, remains present in Defendants' store.

50.     Likewise, Defendants continue to utilize proprietary product display fixtures and shelving units that were designed specifically for Salty Paws locations.

51.     These design elements are illustrated in the following architectural drawings and blueprints used throughout the Salty Paws franchise system (see ¶ 20 above).

52.     Despite Defendants' obligation to remove these elements, Defendants' store continues to incorporate the same distinctive design features used in Salty Paws locations.

53.     The continued use of these design elements creates a store environment that is confusingly similar to an authorized Salty Paws location.

54.    A comparison of representative Salty Paws franchise locations and Defendants' store demonstrates the continued use of these distinctive design features. All Salty Paws franchise locations follow the same signature design template:

 

 

Docusign Envelope ID: 57481C2B-2B0E-482B-9281-F406AB57627E

55.     Indeed, Defendants Salty Paws location was defined by the same physical characteristics on the day of its grand opening:













56.    A comparison between these images and images of Defendants' now-operative

"Ivys Doggie Ice Cream Pawlor" (taken on March 14, 2026) leaves no doubt that the latter is

simply the former with a new name slapped on front, using the same color signature fixture layout, design, and color scheme:

 



57.     In addition to retaining the proprietary store layout and fixtures, Defendants have continued to use a color scheme confusingly similar to that used in Salty Paws locations.

58.     The continued use of these distinctive design elements and color schemes falsely suggests that Defendants' store remains affiliated with, sponsored by, or otherwise associated with Plaintiffs.

59.    Defendants' actions are likely to cause confusion among consumers as to the source, sponsorship, or affiliation of Defendants' business.

**Digital Asset Misuse and Destruction of Evidence**

60.    As part of the operation of the franchised business, Defendants were granted access to various digital assets associated with the Salty Paws franchise location, including corporate email accounts, social media accounts, and other customer-facing communication platforms.

61.    These digital assets were created and maintained in connection with the Salty Paws System and were used to communicate with customers and promote the Salty Paws brand.

62.    Under the parties' agreements, such assets and the information contained therein constitute proprietary materials belonging to Plaintiffs and were required to be preserved and transferred to Plaintiffs following termination of the franchise relationship.

63.    On or about February 26, 2026, Plaintiffs, through counsel, sent Defendants a Cease and Desist and Notice of Breach of Reaffirmation Agreement (the "Cease-and-Desist Letter"). A copy of the Cease-and-Desist Letter is attached hereto as Exhibit C.

64.    The Cease-and-Desist Letter demanded that Defendants cease their ongoing violations of the parties' agreements and expressly instructed Defendants to preserve all documents, communications, and electronically stored information relating to the franchised business.

65.    Despite receiving the Cease-and-Desist Letter and the explicit instruction to preserve evidence (and acknowledging receipt through counsel), Defendants have engaged in the deletion and destruction of electronic communications associated with the franchised business.

66.    For instance, Defendants deleted **all** communications from an email account associated with the former Salty Paws franchise location:



67.    Moreover, Defendants also deleted communications from social media platforms used to communicate with customers of the franchised business (which, notably, were the means by which Defendants diverted business from Salty Paws).

68.    These communications included customer messages, business correspondence, and other communications relating to the operation of the franchise location.

69.    Plaintiffs are informed and believe that certain of the deleted communications included messages in which Defendants diverted customers away from Plaintiffs and made disparaging statements regarding Plaintiffs and the Salty Paws brand. See Exhibit C.

70.    These deletions occurred after Defendants were on notice of the parties' dispute and after Plaintiffs had expressly demanded preservation of evidence.

71.    Defendants' deletion of these communications reflects bad faith conduct and an attempt to conceal evidence of Defendants' ongoing violations of the parties' agreements and misuse of Plaintiffs' proprietary assets.

72.    Further, upon information and belief, Defendants have also continued to exploit Plaintiffs' customer data and marketing channels following termination of the franchise relationship.

73.    For example, on or about March 15, 2026 (after the termination of Defendants' franchise rights and after receipt of Plaintiffs' cease-and-desist letter) Defendants renewed their subscription to the "Constant Contact" marketing platform, which had been used in connection with the Salty Paws franchise location to maintain and communicate with a customer mailing list developed as part of the Salty Paws System:



74.    By renewing and continuing to utilize this platform, Defendants are improperly retaining and exploiting customer contact information and marketing infrastructure belonging to Plaintiffs to solicit business for their competing operation.

**Social Media Advertising and Post-Termination Trademark Infringement**

75.     Defendants have also promoted their business online in a manner that continues to invoke the Salty Paws brand and create confusion regarding whether Defendants' store remains affiliated with Plaintiffs.

76.     For example, Defendants used Defendants' Ivys-branded Facebook presence to promote an in-store event using a chalkboard advertisement prominently displaying the words "Salty Paws Doggie Ice Cream Bar-N-Bakery." Although the post appeared under Defendants' current business name, the advertisement itself expressly used the Salty Paws name in connection with Defendants' store and services, thereby suggesting an ongoing affiliation with Plaintiffs:



77.     Defendants' online presence likewise continues to generate public-facing search results and page descriptions that associate Defendants' business with Salty Paws, including references that identify the Pittsburgh location using the Salty Paws name. These public-facing references increase the likelihood that consumers searching online for Salty Paws will encounter

Defendants' business and mistakenly believe it remains part of, sponsored by, or otherwise affiliated with the Salty Paws franchise system:



78.    In addition, Defendants' online promotional materials depict a store interior that continues to feature the distinctive Salty Paws layout, counter configuration, corrugated wall treatment, and merchandising presentation associated with Plaintiffs' franchise system. By advertising the business using images that display those distinctive design elements, Defendants further reinforce the false impression that the store remains an authorized or affiliated Salty Paws location:



79.    The foregoing online references and promotional materials do not merely describe Defendants' business; rather, they trade on the Salty Paws name, system, and visual identity in a

manner likely to cause confusion among consumers as to source, sponsorship, affiliation, or continuity.

80.    Defendants' continued online use of the Salty Paws name and the distinctive Salty Paws store appearance after termination is unauthorized and constitutes ongoing trademark infringement, false designation of origin, and unfair competition.

81.    Defendants' unauthorized use of the Salty Paws name, store design, and proprietary system has been continuous since the termination of the parties' agreements and remains ongoing as of the filing of this Verified Complaint.

82.    Moreover, as part of the operation of the franchised business, Defendants were assigned and used a telephone number associated with the Salty Paws franchise location (the "Franchise Telephone Number"). The Franchise Telephone Number was used to communicate with customers, receive orders and inquiries, and promote the Salty Paws location in connection with Plaintiffs' System.

83.    Under the Franchise Agreement, the telephone number associated with the franchised business constitutes part of the Salty Paws System. The Franchise Agreement specifically requires that, upon termination of the franchise relationship, the franchisee "take all actions necessary to transfer all phone numbers, addresses, domain names, listings and location contacts for the Business" to Plaintiffs or their designee.

84.    Despite the termination of Defendants' franchise rights and the expiration of the March 4, 2026 rebranding deadline, Defendants have refused to relinquish or transfer the Franchise Telephone Number to Plaintiffs and continue to use that same telephone number in connection with the operation of their competing business.

85.    Further, Defendants have failed to transfer control of the Salty Paws TikTok account associated with the former franchise location, which remains a customer-facing digital

asset created and maintained in connection with the Salty Paws System and which Defendants continue to retain despite their contractual obligation to relinquish such accounts to Plaintiffs following termination.

86. By continuing to use the Franchise Telephone Number and failing to return the Salty Paws Tik Tok account, Defendants are improperly retaining control over customer contact channels developed as part of the Salty Paws System and are diverting customers who reasonably believe they are contacting an authorized Salty Paws location. Defendants' continued use of the Franchise Telephone Number further contributes to consumer confusion and constitutes an additional violation of Defendants' post-termination obligations under the Franchise Agreement.

87. Unless restrained by this Court, Defendants will continue to operate their business using Plaintiffs' proprietary store design, system, and brand references in a manner that falsely suggests an affiliation with Plaintiffs and the Salty Paws franchise system.

88. Defendants' conduct is likely to cause consumer confusion regarding the source, sponsorship, affiliation, or approval of Defendants' business and will continue to damage the goodwill and reputation associated with the Salty Paws brand.

89. As a result of Defendants' actions, Plaintiffs are suffering—and will continue to suffer—irreparable harm for which there is no adequate remedy at law.

**COUNT I:**
**TRADE DRESS INFRINGEMENT**
**(15 U.S.C. § 1125(a))**

90. Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

91. Plaintiffs have developed a distinctive and recognizable store design and merchandising system used consistently across Salty Paws franchise locations.

92. The distinctive design of Salty Paws stores includes, among other elements:

    a.   Proprietary counter designs and display fixtures;

    b.   Distinctive shelving and merchandising arrangements for dog treats and related products;

    c.   A consistent layout guiding customers through the merchandise area before reaching the ice cream service counter; and

    d.   A distinctive overall visual presentation and color scheme used across Salty Paws locations.

93. These elements collectively constitute the distinctive trade dress of Salty Paws stores.

94. The Salty Paws trade dress is distinctive and has acquired secondary meaning in the marketplace as identifying Plaintiffs and the Salty Paws franchise system.

95. Consumers encountering stores featuring this distinctive design associate those stores with Plaintiffs and the Salty Paws brand.

96. Following termination of the Franchise Agreement and expiration of the March 4, 2026 rebranding deadline, Defendants continued to operate their store using the same distinctive layout, fixtures, merchandising techniques, and overall visual presentation associated with Salty Paws locations.

97. Defendants' store incorporates the same proprietary fixtures, counter design, layout structure, and merchandising system used in Salty Paws franchise locations.

98. Defendants' continued use of these distinctive design elements creates a store environment that is confusingly similar to an authorized Salty Paws location.

99. Defendants' use of Plaintiffs' distinctive trade dress is likely to cause confusion among consumers as to the source, affiliation, sponsorship, or approval of Defendants' business.

100. Defendants' conduct constitutes trade dress infringement in violation of 15 U.S.C. § 1125(a).

101. Defendants' infringement is ongoing and will continue unless enjoined by this Court.

102. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm.

103. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs has suffered and will continue to suffer irreparable damage to its reputation and goodwill for which it has no adequate remedy at law.

104. Pursuant to 15 U.S.C. § 1117, Plaintiffs is entitled to recover damages caused by Defendants' unlawful use of the Salty Paws® Marks, in an amount to be determined at trial.

**COUNT II:**
**TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**
**(15 U.S.C. § 1114 and 1125(a))**

105. Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

106. Plaintiffs are the owners of the Salty Paws Mark, which is valid, subsisting, and in full force and effect.

107. The Salty Paws Mark has become distinctive and widely recognized by consumers as identifying Plaintiffs and the Salty Paws franchise system.

108. Under the Franchise Agreement, Defendants were granted only a limited and conditional license to use the Salty Paws Mark in connection with the operation of an authorized Salty Paws franchise location.

109. That license terminated upon the termination of the Franchise Agreement and Defendants' failure to comply with the conditions of the Reaffirmation Agreement.

110. Following termination, Defendants no longer possessed any right, license, or authorization to use the Salty Paws Mark.

111. Despite the termination of Defendants' rights, Defendants have continued to reference the Salty Paws name and brand in connection with the advertising and promotion of their business.

112. As described above, Defendants have promoted their business through advertising materials and online posts referencing Salty Paws and displaying images of a store environment incorporating Plaintiffs' distinctive store design and merchandising system.

113. Through these actions, Defendants are using words, symbols, images, and visual representations that falsely suggest that their business is affiliated with, sponsored by, or otherwise associated with Plaintiffs and the Salty Paws franchise system.

114. Defendants' continued use of the Salty Paws name and references to the Salty Paws brand constitutes unauthorized use in commerce.

115. Defendants' conduct is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, affiliation, or approval of Defendants' business.

116. Defendants' actions therefore constitute trademark infringement in violation of 15 U.S.C. § 1114 and false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

117. Defendants' infringement and unfair competition are ongoing and will continue unless enjoined by this Court.

118. As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm to their goodwill, reputation, and the value of the Salty Paws Mark.

119.    Plaintiffs have no adequate remedy at law for Defendants' conduct.

## COUNT III:
## DEFEND TRADE SECRETS ACT
### (18 U.S.C. § 1836)

120.    Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

121.    The Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., provides a private civil action for misappropriation of a trade secret that is related to a product or service used in, or intended for use in, interstate or foreign commerce.

122.    Plaintiffs have developed proprietary architectural designs, store layout specifications, fixture designs, merchandising methods, customer lists, and operational techniques used in the Salty Paws franchise system.

123.    These materials include confidential architectural drawings, blueprints, and design specifications governing the layout and construction of Salty Paws stores.

124.    These materials constitute trade secrets within the meaning of 18 U.S.C. § 1839.

125.    Plaintiffs derive independent economic value from the secrecy of these materials because they allow Plaintiffs to maintain a distinctive and recognizable retail environment across the Salty Paws franchise system.

126.    Plaintiffs take reasonable measures to maintain the secrecy of these materials, including limiting access to franchisees and requiring confidentiality under franchise agreements.

127.    Defendants obtained access to these materials solely through their relationship as franchisees.

128.    Following termination of the Franchise Agreement, Defendants continued to use Plaintiffs' proprietary store layout, customer lists, digital marketing techniques and platforms, and store design specifications in operating their competing business.

129. Defendants' continued use of these proprietary designs and methods constitutes misappropriation of Plaintiffs' trade secrets.

130. Defendants' misappropriation is ongoing and will continue unless enjoined by this Court.

131. As a result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer irreparable harm.

132. Defendants' conduct was willful and malicious, warranting an award of attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## COUNT IV:
## BREACH OF FRANCHISE AGREEMENT

133. Plaintiffs reallege and incorporate by reference all prior Paragraphs as if re-stated fully herein.

134. Plaintiffs and Defendants entered into the Franchise Agreement attached as Exhibit A.

135. Under the Franchise Agreement, Defendants agreed to comply with the Salty Paws System and to cease using Plaintiffs' marks, proprietary materials, and trade secrets upon termination.

136. The Franchise Agreement also imposes post-termination obligations on Defendants, including obligations not to use the Salty Paws System and not to operate a competing dog-ice-cream retail business within the restricted territory.

137. The Reaffirmation Agreement provided that Defendants would be relieved of certain post-termination obligations only if they complied with specific conditions, including the obligation to fully rebrand the store and cease use of Plaintiffs' proprietary system.

138. Defendants failed to comply with those conditions.

139. Because Defendants failed to satisfy those conditions, Defendants remain bound by the post-termination obligations of the Franchise Agreement.

140. Defendants have breached those obligations by:

    a. Continuing to operate a store incorporating Plaintiffs' proprietary system and store design; and

    b. Operating a competing dog-ice-cream retail business at the formerly franchised location.

141. As a result of Defendants' breaches, Plaintiffs have suffered damages and irreparable, ongoing harm.

142. Plaintiffs are entitled to recover judgment against Defendants for all damages sustained as a result of their breaches of the Franchise Agreement.

**PRAYER**

WHEREFORE, Plaintiffs request judgment with each item of this prayer being for relief additional to, and alternative to each other item and not an election of remedies, as follows:

A. The entry of a temporary, preliminary, and permanent injunction prohibiting Defendants and their respective agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations and companies, and all others in privity or acting in concert with them, from:

    a. Using the Salty Paws® Marks, trade dress, or any confusingly similar name, term, symbol, device, or designation, in connection with the advertising, promotion, offering for sale, or sale of any goods or services;

    b. Using, displaying, advertising, promoting, or otherwise trading on Plaintiffs' distinctive store design, trade dress, merchandising system, proprietary fixtures, layout, coloring, or visual presentation associated with the Salty Paws franchise system;

c.      Representing, directly or indirectly, that any business operated by Defendants is affiliated with, sponsored by, approved by, or otherwise associated with Plaintiffs or the Salty Paws franchise system;

d.      Deleting, altering, concealing, transferring, or destroying any documents, electronically stored information, communications, customer messages, account data, or other records relating to the franchised business, the Salty Paws System, or the conduct alleged in this Complaint;

e.      Continuing to control, use, or interfere with any corporate email accounts, social media accounts, customer-facing communication platforms, or other digital assets associated with the former franchise location.

B.      The entry of a temporary, preliminary, and permanent injunction ordering Defendants immediately to:

a.      Remove all references to Salty Paws from any social media account, online profile, listing, advertisement, search result description, or other promotional material within their possession, custody, or control;

b.      Cease operation of the business in its current confusingly similar layout, design, and merchandising format;

c.      Return to Plaintiffs all Operations Manuals, blueprints, architectural drawings, design specifications, confidential information, customer communications, vendor information, and proprietary materials belonging to Plaintiffs;

d.      Preserve all documents, electronically stored information, social-media content, messages, customer communications, and other evidence relating to the allegations in this action;

e.    Provide Plaintiffs with access to, and control over, all franchisor-owned digital assets and accounts associated with the former franchise location, including corporate email and social-media accounts.

C.    Award Plaintiffs damages for Defendants' violations of the Lanham Act in an amount to be determined at trial, including all damages authorized by 15 U.S.C. § 1117;

D.    Award Plaintiffs damages for Defendants' trade dress infringement, false designation of origin, and unfair competition in an amount to be determined at trial;

E.    Award Plaintiffs damages for Defendants' misappropriation of trade secrets under the Defend Trade Secrets Act, including injunctive relief, compensatory damages, and, to the extent permitted, exemplary damages and attorneys' fees;

F.    Award Plaintiffs damages for Defendants' breach of the Franchise Agreement, including all contractual damages resulting from Defendants' violation of their post-termination obligations;

G.    Award Plaintiffs their **attorneys' fees, costs, and expenses** as permitted by the Franchise Agreement, the Defend Trade Secrets Act, the Lanham Act, and other applicable law;

H.    Award Plaintiffs pre-judgment and post-judgment interest as permitted by law; and

I.    Award such other and further relief as this Court deems just and proper.

Dated: March 19, 2026                                   Respectfully Submitted,

By:    _____
Evan M. Goldman, Esquire
**THE FRANCHISE FIRM LLP**
225 Wilmington West Chester Pike,  Suite 200
Chadds Ford, Pennsylvania 19317
T: (215) 965-9499
*Attorneys for Plaintiffs,*
*Stay Salty, LLC and Stay Salty IP, LLC*

**VERIFICATION**

Suzanne Tretowicz, being duly sworn, deposes and says:

I am Founder and Owner of Plaintiffs. I have read the foregoing Verified Complaint and know the contents thereof, and state that the allegations are true and correct. I based this verification on my own personal knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, I believe them to be true and correct. The grounds of any knowledge, information, and belief, are derived from my position as Founder and Owner, any personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, within limitation, my review of Plaintiffs' records and conversations with Plaintiffs' employees.

DocuSigned by:

**SUZANNE TRETOWICZ**

ECF9ABD3C353759

Suzanne Tretowicz